SUCCESSION OF FELIX DE ARMAS—JOSEPH LE CARPENTIER, Dative Testamentary Executor, Appellant.

The legal mortgage declared by art. 3283 of the Civil Code, to exist on the property of one who without having been appointed tutor or curator to a minor, an interdicted or absent person, interferes in the administration of the property, from the day of the first act of interference, will not attach to the property of one who, having become the surety of a tutor on the condition that he (the surety) should administer the property. received from the tutor, in pursuance of the agreement, money belonging to his wards, which he failed to pay over. The tutor having assented to the employment of the money by his surety, the latter cannot be considered as having interfered with the administration in the meaning of art 3283.

An executor is entitled to a commission of two and a half per cent on the whole amount of the inventory, after deducting bad debts and unproductive property. The price for which the property comprised in the inventory may sell, is not the standard by which his commissions are to be calculated.

APPEAL from the Court of Probates of New Orleans, *Bermudez, J.*

BULLARD, J. The dative testamentary executor is appellant from a judgment of the Court of Probates, by which the opposition of the tutor *ad hoc* of the minors, Alpuenté, was sustained, and a legal mortgage in their favor recognized upon the property of the succession, and the commission of the executor reduced below the sum claimed by him in his account.

The legal mortgage in favor of the minors, was declared to exist, in consequence of the deceased, De Armas, having intermeddled in the administration of the minors' affairs, in virtue of article 3283 of the Civil Code, which declares such mortgage to exist on the property of persons, who, without having been appointed tutors or curators of minors, interdicted, or absent persons, interfere in the administration of their property, reckoning from the day on which the first act of interference was done.

The facts appear to be, that the deceased, De Armas, became the surety of the tutor of the minors, Alpuenté, upon the condition that he should have and administer the property of the minors ; that he received the amount claimed, from the tutor, a few months before his death ; that the tutor never provided for the expenses of the minors, who were at a boarding school, under the

care of De Armas. It further appears that the tutor received from Octave de Armas the amount coming to the minors from different successions, and handed it over to the deceased, Felix de Armas; that the tutor received the amount himself, and then placed it in the hands of the deceased, in pursuance of their agreement.

The question is, whether this amounts to an interference in the administration of the minor's property, in the sense of the article of the Code above referred to ?

It cannot be doubted that whatever was done by De Armas in relation to the minors, was done with the consent of the tutor, and that the money was confided to him, in order to protect him as surety of the tutor.

A similar question arose in the case of *Nolté & Co.* v. *Their Creditors*, 8 Mart. N. S. 366. The insolvents were charged with having used a part of the funds belonging to the minors, Harman. It appeared that the estate of the ancestor was under administration by testamentary executors, but it was not shown that the minors were provided with a tutor. The creditors of the insolvents contended that the interference of V. Nolté & Co. was authorized by the executors, or, at least, that they subsequently sanctioned it. But the court said, the evidence did not support either of those allegations, and that there was no proof whatever of authority given by the executors. The case turned upon that question. Now, in the present case, the tutor assented expressly to the employment of the funds by De Armas, and the transaction amounts to little more than a deposit in the hands of De Armas, in the nature of a counter security. It was rather an improper appropriation of the funds by the tutor, than an intermeddling with the minors' property by the deceased. The intention of the legislator appears to us to have been, to protect minors against intermeddlers without any legal authority, and particularly in cases where the minor is without a tutor. It is, perhaps, to be lamented that the law is not broad enough to embrace a case like the present. But it must be remembered that the question here presents itself, in reference to other creditors of De Armas; and, as to them, the legal mortgage cannot be declared to exist except in cases clearly pointed out by law.

The commission allowed by law to executors is two and a half

per cent on the whole amount of the estimate of the inventory, making a deduction for what is not productive, and for what is due by insolvent debtors. Civ. Code, art. 1676.

The commissions charged are 2½ per cent on the amount of the inventory, independent of notes and of the collections made by the executors (*recouvrements*). The inventory amounted to $74,509 88, and the commissions charged were upon $54,580 14, allowance having been made, we presume, for debts not collected; but the court was of opinion that, the estate not being entirely administered, the executor had a right to retain only his commissions on the sums actually received or recovered by him, to the exclusion of promissory notes not yet due, which sums amounted to $28,082 42. We are of opinion that the court erred. The standard by which the commissions are to be calculated, is the inventory, deducting bad debts and unproductive property, and not the price for which the property comprised in the inventory may sell. In this case the executor has charged his commissions only upon the property, and such sums as he has recovered of the debtors of the deceased.

It is, therefore, ordered, that the judgment of the Court of Probates be reversed, so far as it gives to the minors, Alpuenté, the right of a legal mortgage on the estate, and so far as it reduces the commissions of the executor below the amount claimed by him; that, in other respects, the judgment be affirmed; and that the appellees pay the costs of this appeal.

This case was submitted, without argument, by *Benjamin* for the appellant, and *Canon* for the appellee.